## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WDC SOLAR, INC., <br>     1105 W St, SE <br>     Washington, DC 20020, <br>     a District of Columbia limited liability company, <br><br>         Plaintiff, <br><br>         v. <br><br> NICHOLAS HAYES, <br>     810 May Ct <br>     Bel Air, MD 21014, <br>     a Maryland resident, <br><br>     and <br><br> EVOLUTION SOLAR, LLC, <br> DBA ADVANCED SOLAR <br>     810 May Ct <br>     Bel Air, MD 21014, <br>     a Delaware limited liability company, <br><br>         Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | <br><br><br><br><br><br><br><br> Civil Action No. _____ <br><br><br><br> JURY DEMAND |

## VERIFIED COMPLAINT FOR TEMPORARY, PRELIMINARY, AND PERMANENT INJUNCTIVE RELIEF AND FOR DAMAGES

Plaintiff WDC Solar, Inc. ("WDC") brings this action against its joint venture partner, Defendant Evolution Solar, LLC ("Evolution"), and Evolution's sole member and owner, Defendant Nicholas Hayes, because they are engaging in a course of unlawful misconduct through which they are attempting to destroy WDC and the parties' joint venture. They are doing so because (i) they believe it gives them leverage in the parties' ongoing disagreement over the amount of joint venture profits to which they are entitled, and (ii) they secretly have rebranded and relaunched Evolution as a direct

1

competitor of the joint venture and WDC. It appears that they are convinced that the more damage they cause to WDC, the better their future prospects will be.

Defendants' recent and ongoing wrongful actions include, but are not limited to: (1) unlawfully competing with the joint venture; (2) locking WDC and the joint venture out of two customer management and document storage accounts that are essential to their ability to carry out their operations and meet their contractual obligations to customers; (3) extorting WDC and the joint venture by stating that they will not restore their account access unless WDC pays a ransom of $100,000 or more; (4) stealing WDC's confidential trade secrets, including its customer lists, and exploiting that information to target and defraud WDC's customers; (5) causing their employees to impersonate WDC employees so that WDC's and the joint venture's customers will unwittingly pay to the Defendants the contractual charges the customers owe to WDC and the joint venture; (6) sneaking into WDC's warehouse while it was closed and stealing tools and equipment with an estimated worth of $69,000, in order to use them with their new competing business; and (7) attempting to make a large, unauthorized withdrawal of $280,000 from the bank account used by WDC and the joint venture, which would have drained the account and prevented WDC and the joint venture from continuing their operations.

Defendants carried out their schemes with the assistance of other companies and individuals who now are in unlawful possession of WDC's property and trade secrets. WDC may seek to add them as defendants to this action as needed once it determines their exact identities and roles.

For relief, WDC seeks an injunction against the Defendants ordering them to restore WDC's access to their essential business management accounts; to cease and desist defrauding WDC's customers and impersonating WDC employees; and to return all property and trade secrets they stole.[1]

**Mr. Hayes has a history of threatening to murder business associates with whom he has a falling out, and WDC therefore may also seek to enjoin Mr. Hayes from having any contact whatsoever**

---

[1] WDC is filing herewith an Application for Temporary Restraining Order and for Preliminary Injunction seeking this same relief on an immediate and temporary basis.

**with WDC's employees.** WDC also seeks $1.1 million in compensatory damages for the lost revenue it is continuing to incur, punitive damages, and reimbursement of its costs and attorneys' fees.

## PARTIES

1.     Plaintiff WDC is a District of Columbia corporation with its principal place of business in the District of Columbia. WDC, formed in 2009, is one of the most prominent, well-respected, established and largest builders and installers of solar panel systems in the D.C. Metropolitan area.

2.     Defendant Nicholas Hayes is a resident of Maryland. He is the sole member and owner of Defendant Evolution, which is his alter ego.

3.     Defendant Evolution is a Delaware limited liability company, a relative newcomer in the business, having been formed in August 2019, and registered to do business in the District of Columbia in November 2020.  Its principal place of business is Mr. Hayes's personal residence in Maryland. Evolution is the joint venture partner of WDC.  Evolution is currently doing business under the trade name "Advanced Solar."

## JURISDICTION AND VENUE

4.     The Court has diversity jurisdiction over all claims pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and Plaintiff WDC's citizenship (the District of Columbia) is diverse from that of the defendants, Mr. Hayes (Maryland) and Evolution (Maryland).

5.     The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises in part out of the defendants' violations of federal statutes providing for civil relief, including the Computer Fraud and Abuse Act ("CFAA") (18 U.S.C. § 1030), and the Electronic Communications Privacy Act ("ECPA") (18 U.S.C. § 2510).

6.     The Court has supplemental jurisdiction over WDC's state law claims pursuant to 28 U.S.C. § 1367 because they are closely related to its federal claims and form part of the same case or controversy.

7.     The District of Columbia is the proper venue for this action pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965(a) because the parties agreed in their joint venture agreement that their disputes must be adjudicated in the District of Columbia; it is where the parties' joint venture is based; it is where the parties transacted most of their business together; and it is where Mr. Hayes and Defendant Evolution committed some or all of the misconduct described herein.

8.     An actual and justiciable controversy exists between WDC and the defendants in that the defendants have stolen WDC's account access, property, and confidential information and have harmed its business and WDC seeks injunctive relief to require the return of its account access, property, and information, as well as money damages.

## FACTS COMMON TO ALL COUNTS

### Formation and Terms of the Parties' Joint Venture

9.     WDC builds and installs solar panel systems for customers in the D.C. Metropolitan area and elsewhere in the MidAtlantic region. WDC has been building solar photovoltaic systems for homeowners, businesses, government, and religious institutions since 2009 in Washington, D.C. and the surrounding areas.  For several years, WDC focused its business almost exclusively on large-scale commercial solar installations for businesses, churches, and government agencies.

10.     Mr. Hayes approached WDC in August 2019 and proposed forming a joint venture between WDC and Evolution, his self-owned solar installation company, to focus on small-scale residential installations for homeowners in the District of Columbia.

11.     The parties agreed to combine their efforts for their mutual benefit, and they signed a joint venture agreement ("JV Agreement").[2] The key terms of the JV Agreement are as follows:

---

2   *See* Exhibit 1 (JV Agreement, titled Solar Business Agreement entered into December 17, 2020.  The terms of this agreement are the same as the original agreement between the parties).

- *Purpose and Scope* – The purpose and scope of the joint venture is for the parties to "work together in the Washington, D.C. metropolitan area selling and installing residential solar systems."[3]

- *Term and Notice of Termination* – The term of the JV Agreement was a minimum of one year. However, WDC and Evolution extended the JV Agreement, including a one-year extension beginning on December 17, 2020. Either party may terminate the JV Agreement for any reason, but the termination does not become effective until thirty (30) days after the party issues a notice of termination.[4]

- *Use of Accounts* – Among other responsibilities, Defendants were required to "[c]reate and implement customer relationship management ("CRM") and proposal tools for use by WDC solar and Evolution Solar sales personnel."[5]

- *Profit Sharing* – The parties are to share the net profits of the joint venture equally. The JV Agreement anticipates that net profits would be calculated by aggregating a series of reports that each party would submit on a weekly basis detailing the revenues and costs for its side of the venture. Up to 80% of the net profits could be distributed on a monthly basis, while 20% would be kept in reserve to fund future operations.[6]

- *Confidential Information* – The parties are permitted to share their confidential information – such as customer lists – with each other while still retaining ownership and control of that information.[7] Each party is prohibited from using the other's confidential information for its own personal benefit and must return all confidential information upon request after the joint venture terminates.[8] The parties acknowledge that any unauthorized disclosure or misappropriation of confidential information could cause irreparable harm and consent to an award of injunctive relief to prevent such disclosure or misappropriation.[9]

- *Breach and Notice Thereof* – A breach of the JV Agreement is defined as a party "(i) failing to perform such Party's affirmative obligations under the terms and conditions of this Agreement, (ii) failing to abide by any rules or restrictions created by the terms and conditions of this Agreement, and/or (iii) engaging in any illegal activity in connection with this Agreement."[10] Any party claiming a breach of the JV Agreement must give notice of the breach within seven days of learning of the claimed breach.[11]

- *Attorneys' Fees* – The prevailing party in a legal action commenced to enforce the JV Agreement is entitled to recover its attorneys' fees and costs.[12]

---

3   Exhibit 1 (JV Agreement), Second Whereas Clause, ¶ 9.
4   Exhibit 1 (JV Agreement), ¶ 7 ("If either Party desires to terminate this Agreement prior to the end of the Term, such Party must give written notice to the other Party at least thirty (30) days prior to the date such termination shall become effective").
5   Exhibit 1 (JV Agreement), ¶ 1.
6   Exhibit 1 (JV Agreement), ¶ 4.
7   Exhibit 1 (JV Agreement), ¶¶ 10, 12.
8   Exhibit 1 (JV Agreement), ¶¶ 11, 13.
9   Exhibit 1 (JV Agreement), ¶ 18.
10   Exhibit 1 (JV Agreement), ¶ 6(a).
11   Exhibit 1 (JV Agreement), ¶ 6(c).
12   Exhibit 1 (JV Agreement), ¶ 19.

**The Joint Venture's Operations and Accounts**

12.     When the parties formed their joint venture, their expectation was that WDC and Evolution each would independently operate its own residential solar installation business in the District of Columbia, but they would assist each other by sharing information and resources. In Evolution's case, it would continue its preexisting residential operation, and in WDC's case, it would begin a new residential component to its existing business, which had until then almost exclusively involved commercial installations. The two companies would then pool the expenses and revenues from their operations – excluding WDC's separate commercial business component – and split them equally.

13.     In practice, however, almost all of the parties' collective work was performed under the WDC banner by WDC employees and using WDC equipment. WDC also paid most of the venture's expenses.

14.     The parties also did not follow the anticipated methodology for tracking their revenues and costs attributable to the joint venture. The JV Agreement calls for each party to submit weekly reports with this information, and for the weekly reports to be aggregated to calculate the joint venture's monthly distribution of net profits. In practice, neither party submitted weekly reports or took their distributions regularly on a monthly basis. Accordingly, an accounting will need to take place to determine each company's outstanding portion of the joint venture's costs and revenues.

15.     The joint venture used WDC's preexisting bank account at Chase Bank (the "Chase Account") for paying most of its expenses and for depositing its revenues. WDC added Mr. Hayes as an authorized user on the Chase Account, and he and several employees were issued credit cards and/or checkbooks so that they could make payments from the account on behalf of the joint venture. WDC continued to use the Chase Account for its commercial operations as well, with the knowledge and consent of all parties.

16.     In contrast with the Chase Account, which had belonged to WDC prior to the joint venture sharing it, the parties agreed to create all-new accounts for the purposes of managing the joint venture's customers and operations and storing its customer contracts, data files, and other essential documents. Mr. Hayes set up WDC's customer relationship management ("CRM") account through SunbaseData (the "Sunbase Account"), and he set up its document storage account through Dropbox (the "Dropbox Account"). When Mr. Hayes set up these accounts, he did so in his own name, even though they were to be used for the benefit of WDC and the joint venture. WDC's employees had access to the accounts, through which they managed WDC's residential business on behalf of the joint venture.

17.     To store equipment, the joint venture used WDC's warehouse. The tools and equipment that were to be used on joint venture projects were kept separate from WDC's other equipment that was for use on its commercial projects. Mr. Hayes was provided keys to the warehouse.

**Defendants Attempt to Steal $280,000 from the Joint Venture and WDC**

18.     On December 17, 2020, the parties renewed their joint venture for another year by executing an extension agreement.[13] The very next day, without giving any advance indication that he would do so, Mr. Hayes went to Chase Bank and attempted to withdraw $280,000 for Evolution from the Chase Account. Had he been successful, he would have drained the account almost entirely. This would have crippled the joint venture's operations as well as WDC's commercial operation, leaving WDC unable to pay its staff or meet its other day-to-day financial obligations. Mr. Hayes's withdrawal also would have constituted rank theft; as Mr. Hayes knew, much of the money in the Chase Account belonged to WDC because it was generated from WDC's separate commercial operations and because WDC was entitled to half of the net profits from the parties' joint venture residential operations.

---

13  *See* Exhibit 1.

19.    Fortunately, Mr. Hayes's conduct was so suspicious that the bank refused to disburse the money to him. They instead called WDC's President, Mark Davis, to see if a withdrawal of that magnitude was authorized, and he informed them that it was not. Indeed, Mr. Hayes had no right to make a personal withdrawal of any material amount at that time, because the parties had not yet carried out an accounting to determine what the net profits of the joint venture were as of that time and what each party's share of that amount would be.

20.    Mr. Hayes, frustrated that his attempted theft had been blocked, demanded that Mr. Davis immediately pay him hundreds of thousands of dollars. Mr. Davis agreed to make an early distribution to Defendants of $150,000, believing that the parties would be in business together for the next year given the contractual extension they had just signed and given Mr. Hayes's assurances that Defendants wanted to be in business with WDC. However, Mr. Davis conditioned the disbursement on Mr. Hayes's promise to reimburse WDC for whatever portion of that amount proved to be in excess of Evolution's actual share of net profits once an accounting was complete.

**Defendants Seize the Joint Venture's Accounts and Steals $69,000 of Equipment**

21.    WDC was forced to close its offices and warehouse and cease operations for two weeks beginning in late December 2020 after an employee tested positive for COVID-19.

22.    When Mr. Davis reopened WDC on January 4, 2021, he discovered that Mr. Hayes had raided its warehouse during the closure. Many of the shelves in the warehouse were completely bare, and numerous boxes of tools and equipment were gone. The missing equipment, which belonged to WDC and was needed to perform work for its residential customers for the benefit of the joint venture, has an estimated worth of $69,000.  The same day, WDC was informed by its vendor, CED Greentech, that individuals impersonating WDC were attempting to obtain equipment from CED Greentech.

23.    Mr. Davis also discovered that Mr. Hayes had locked WDC out of the joint venture's Sunbase Account and Dropbox Account. Prior to January 4, WDC employees had been accessing the

accounts many times per day on behalf of the joint venture, because the two accounts served as the hub of the joint venture's operation. Together, the accounts house the joint venture's and WDC's customer contact information, contracts, communications, appointments, project files, drawings, specifications, etc. Without this information, WDC cannot carry out its residential operation on behalf of the joint venture or on its own behalf.

**Defendants Ransom the Stolen Accounts and Equipment and Extort WDC**

24.     On January 5, Mr. Hayes reached out to WDC to offer "a solution" to the impossible position he had put WDC in.  WDC called Mr. Hayes back on January 6, and **Mr. Hayes admitted to cutting off WDC's access to the Sunbase Account and Dropbox Account and to taking the $69,000 of equipment, and he said he would not restore access or return the equipment unless WDC paid Defendants $100,000.**

25.     On January 6, when WDC asked Mr. Hayes what right he had to sabotage WDC and the parties' joint venture as he was doing, he answered that he did it based on the advice of his attorney, Carlos Recio.[14] WDC has since learned that Mr. Hayes engaged in this same pattern of misconduct with a prior business partner – i.e., seizing access to essential business accounts and property belonging to that business. He did so also while represented by Mr. Recio.  According to his prior business partner, Matt Young, Mr. Hayes also threatened to murder him by "putting a bullet in his head."

**Defendants Begin Impersonating WDC, Stealing its Revenues, and Defrauding Its Customers**

26.     Defendants have been taking unlawful advantage of their sole access to the customer data and files stored in the Sunbase and Dropbox Accounts. They have been contacting WDC's residential customers and lying to them in order to steal the contractual obligations that the customers owe to WDC. In one example, Defendants showed up at a customer's residence with a crew of

---

[14] Because Mr. Hayes disclosed Mr. Recio's advice to him and put it at issue, WDC is entitled to full discovery of all communications between Mr. Hayes and Mr. Recio regarding his misconduct.  These communications are not protected by the attorney-client privilege.  It is inapplicable due to the crime-fraud exception.

employees to perform an installation while dressed in WDC uniforms emblazoned with service marks owned by WDC, reading "WDC SOLAR". The customers allowed the work to be performed because they believed it was WDC who was at their house. Defendants also tricked the customer into signing a new contract by claiming that the existing contract did not have the correct project specifications. Unbeknownst to the customer, the new contract is not with WDC but with Defendants.

27.     WDC heard about this impersonation and fraud and contacted the customer, who confirmed that the crew that showed up at their house had been wearing WDC uniforms and that they had signed a new contract based on the false pretenses given to them by Defendants. WDC is unable to check in with its other residential customers to determine how many have been defrauded by Defendants so far, because Defendants are blocking WDC's access to the Sunbase and Dropbox Accounts.

**Defendants Wrongfully Compete with the Joint Venture and WDC**

28.     In addition to the events described above, WDC learned that Defendants secretly relaunched Evolution under the trade name Advanced Solar in November, prior to notice of termination, and have been directly competing with WDC and the joint venture for customers ever since.  In November 2020, Defendants established a website for a company called "Advanced Solar." The website solicits customers, offers estimates for solar installations, and includes contact information where customers can sign up with Advanced Solar. The website also includes copyrighted content from WDC's website, including installation of WDC projects.  Government records show that they registered Advanced Solar as being the trade name of Evolution in the District of Columbia on December 7, 2020.  Although using a different trade name, any business conducted under the name of Advanced Solar would also be joint venture business because the entity operating under the name Advanced Solar is still Defendant Evolution, a member of the joint venture with WDC Solar.  It

appears that Defendant Evolution set up the separate trade name to attempt to hide business from the joint venture with WDC Solar.

29.    Defendants launched Advanced Solar as a competing business just weeks before they renewed the joint venture with WDC and committed to be its joint venture partner for another year. In hindsight, it is obvious that the Defendants only renewed the joint venture on December 17, 2020 because Mr. Hayes had not yet attempted to drain the money in the Chase Account to aid his new competing venture. When his attempt to do so the next day failed, Mr. Hayes 'settled' for obtaining an early distribution of $150,000 from the joint venture, stealing WDC's customer list and other confidential information, and stealing $69,000 of WDC's equipment.

30.    The Defendants' theft, account seizures, and associated misconduct was calculated to help them: first, by financially harming and weakening their main competition, WDC, and, second, by providing Defendant Evolution with the money and inventory it needed to fuel its new operation under the trade name of Advanced Solar.

**Defendants Purport to Terminate the Joint Venture**

31.    On January 5, 2021, WDC received a letter in which Mr. Hayes, through his attorney Mr. Recio, purported to immediately terminate the joint venture (the "Termination Letter"). However, because the JV Agreement states that the joint venture does not terminate until 30 days after such a notice is received, the joint venture by the express terms of the JV Agreement, continues to exist and operate through February 4, 2021.[15]

32.    Because the joint venture has not terminated, this means that Mr. Hayes and Evolution carried out *all* of the misconduct described in this Complaint while they were joint venture partners with WDC, with all the fiduciary duties and other contractual and legal obligations that relationship entails. Even if the termination were effective as of January 5, 2021, Defendants by that time already

---

15  Exhibit 1 (JV Agreement), ¶ 7.

had wrongfully begun competing with WDC and the joint venture; attempted to steal $280,000 from the joint venture and WDC; blocked access to the Sunbase and Dropbox Accounts in an attempt to cripple the joint venture's and WDC's businesses and fund their new competing business; and trespassed in WDC's warehouse and stolen approximately $69,000 in equipment needed to carry out work for the joint venture's customers. To WDC's knowledge, only the Defendants' impersonation of WDC's employees, theft of its trademark, and stealing of its active customer contracts took place after January 5, and that illegal activity very well may have begun prior to January 5 as well.

33.     The Termination Letter accuses WDC and Mr. Davis of breaching the JV Agreement by spending money from the Chase Account on WDC's commercial projects and on other expenses unrelated to the joint venture's business. The letter accordingly purports to terminate the agreement "for cause." The JV Agreement's termination provision does not even require cause to terminate the joint venture, however, and the accusations are just a transparent attempt to intimidate WDC from holding Defendants accountable for their premeditated attacks on the joint venture and WDC.

34.     In any event, the accusations in the Termination Letter are wrong for the simple reason that the Chase Account did not belong to the joint venture; the account was used by WDC before the joint venture began, and it continued to be used by WDC's commercial business with the knowledge and consent of all parties. Mr. Davis is the sole owner and beneficiary of WDC's commercial business, and, therefore, he had total discretion in how to spend its money.

35.     Regardless, even if Mr. Hayes did have a good faith claim to an additional payment of net profits from the Chase Account, this would not remotely justify his many purposeful actions to destroy the business of the joint venture and WDC.

**WDC Unsuccessfully Attempts to Resolve the Parties' Dispute**

36.     Since January 5, 2021, WDC has spoken with Mr. Hayes in an attempt to get him to cease his attacks on WDC and the joint venture.

37.     Mr. Hayes responded by further committing to his course of misconduct, attempting to extort WDC and holding WDC's property and accounts for ransom.

38.     Given the emergency nature of the situation, Defendants left WDC no choice but to bring this action on behalf of itself and the joint venture.

<u>COUNT I</u>
**VIOLATION OF THE FEDERAL COMPUTER FRAUD AND ABUSE ACT – 18 U.S.C. § 1030**

39.     WDC incorporates herein by reference its allegations set forth above.

40.     The Federal Computer Fraud and Abuse Act (CFAA) provides civil remedies for certain types of unauthorized access to protected computers that causes damages to the complainant, including:

- "access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] ... information from any protected computer";

- "knowingly and with intent to defraud, access[ing] a protected computer without authorization, or exceed[ing] authorized access, and by means of such conduct further[ing] the intended fraud and obtain[ing] anything of value";

- "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, recklessly caus[ing] damage";

- "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, caus[ing] damage and loss"

- "knowingly cause[ing] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally cause[ing] damage without authorization, to a protected computer."

- "with intent to extort from any person any money or other thing of value, transmit[ting] in interstate or foreign commerce any communication containing any ... threat to cause damage to a protected computer ... threat to obtain information from a protected computer without authorization or in excess of authorization or to impair the confidentiality of information obtained from a protected computer without authorization or by exceeding authorized access ... or demand or request for money or other thing of value in relation to damage to a protected computer, where such damage was caused to facilitate the extortion"

*See* 18 U.S. Code§ 1030.

41.     Under the CFAA, a "protected computer" is "a computer which is used in or affecting interstate commerce or communication." 18 U.S.C. § 1030(e)(2)(B).

42.      Under the CFAA, "damage" exists where the activity results in loss to "1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(A)(i)(I).

43.      The computers and database systems that WDC used for business purposes constitute a computer used in or affecting interstate or foreign commerce or communication, and therefore was a "protected computer" within the meaning of 18 U.S.C. § 1030(e)(2)(B).

44.      The Defendants violated the above prohibitions, as set forth more particularly above. Defendants, without authorization, have taken control of and prevented WDC's use of WDC systems and accounts, and seized control of WDC's proprietary and confidential information as a part of a scheme to cripple WDC's and the joint venture's businesses and extort $100,000 from WDC.

45.      Defendants' action in locking WDC out of the accounts constituted a knowing transmission of a command to a protected computer, within the meaning of 18 U.S.C. § 1030(a)(5)(A).

46.      By locking the accounts, Defendants caused intentional damage to WDC and the joint venture, within the meaning of 18 U.S.C. § 1030(a)(5)(A). Defendants acted without WDC's authorization, and, in fact, contrary to WDC's requests and demands.

47.      The CFAA authorizes "[a]ny person who suffers damage or loss by reason of a violation of [the CFAA] [to] maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. 18 U.S.C. § 1030(g).

48.      The systems that Defendants tampered with and stole were integral to WDC's and the joint venture's businesses and their loss has been very disruptive and costly.  The Defendants' unauthorized use of that information to extort WDC has further damaged WDC by, among other things, disrupting and destroying WDC's ability to effectively operate its business, preventing WDC's growth and financial profitability and wasting and diverting significant executive time.

49.     As a result of Defendants' ongoing violation of the CFAA, WDC has suffered and will continue to suffer damages in the form of lost profits, reputational harm and loss of goodwill, and monetary damages for the costs and expenses incurred by WDC, aggregating well in excess of $5,000.00.

## COUNT II
## VIOLATION OF THE FEDERAL ELECTRONIC COMMUNICATIONS PRIVACY ACT - 18 U.S.C. § 2701(a).

50.     WDC incorporates herein by reference its allegations set forth above.

51.     Defendants knowingly and intentionally accessed WDC's computers or computer systems without authorization and/or knowingly or intentionally exceeded any authorization they did have to access WDC's computers or computer systems.

52.     Defendants thereby obtained access to wire or electronic communications while they were in electronic storage in WDC's computers or computer systems and prevented WDC's authorized access to the wire and electronic communications in electronic storage in the computer systems.

53.     Defendants' actions constitute a violation of 18 U.S.C. § 2701(a).

## COUNT III
## BREACH OF FIDUCIARY DUTIES

54.     WDC incorporates herein by reference its allegations set forth above.

55.     As joint venture partners, Defendants owed fiduciary duties to WDC, including the duty of loyalty and to act all times in the interest of the joint venture and not to engage in business conduct that was contrary to the interests of the joint venture.

56.     As more particularly set forth above, Defendants breached their fiduciary duties to WDC by, among other things:

    a.  Attempting to steal funds from the joint venture;

    b.  Seizing the joint venture's accounts and locking out their joint venture partner;

    c.  Preventing the joint venture from carrying out its operations;

15

    d.   Stealing $69,000 worth of equipment;

    e.   Ransoming the stolen accounts and equipment; and

    f.   Wrongfully competing with the joint venture and defrauding the joint venture's customers.

57.    As a reasonable, foreseeable, direct and proximate result of Defendants' breaches of their fiduciary duties, WDC has suffered damages in an amount to be proven at trial in an amount of not less than $1.1 million.

## COUNT IV
## BREACH OF CONTRACT

58.    WDC incorporates herein by reference its allegations set forth above.

59.    The JV Agreement between WDC and Evolution, entered into in August 2019 and renewed on December 17, 2020, constitutes a valid and enforceable joint venture agreement.

60.    By locking WDC out of the Sunbase Account and Dropbox Account, Defendants breached Section 1 of the JV Agreement, which requires WDC's access to those accounts.

61.    The JV Agreement requires that a party give the other party thirty (30) days' notice of that party's intention to terminate the joint venture. By failing to give WDC thirty (30) days' notice in their Termination Letter, Defendants breached Section 7 of the JV Agreement.

62.    The JV Agreement requires a party to return all confidential information to the disclosing party not later than (3) business days after demand.  Defendants have breached Section 13 of the JV Agreement by failing and refusing to return WDC's confidential information.

63.    The JV Agreement included an implied obligation for all parties to act in good faith. Defendants' misconduct described above, including their competition with the joint venture, have been in breach of the obligation of good faith and fair dealing.

64.    Defendant Hayes induced Defendant Evolution to breach its contractual obligations to WDC.

65.     Defendant Hayes aided and abetted Defendant Evolution in breaching its contractual obligations to WDC.

66.     WDC has suffered and continues to suffer injury as a result of Defendants' breach of their contractual obligations.

## COUNT V
## TRESPASS

67.     WDC incorporates herein by reference its allegations set forth above.

68.     Defendants combined and conspired to intentionally intrude upon WDC's property.

69.     Defendant Hayes only gained access to WDC's property through the use of pretense, subterfuge, misrepresentation and/or concealment.

70.     Defendants' intrusion invaded and disrupted WDC's possession and control over its property.

71.     WDC has suffered and continues to suffer injury as a result of Defendants' intrusion.

## COUNT VI
## CONVERSION

72.     WDC incorporates herein by reference its allegations set forth above.

73.     Defendants unlawfully exercised ownership, dominion and control over WDC's and the joint venture's computer system and files when they locked WDC out of its computer systems without WDC's authorization or consent and when they stole property belonging to the joint venture.

74.     Defendants' exercise of ownership, dominion and control over WDC and the joint venture's property was in denial or repudiation of WDC's own rights thereto.

75.     WDC was damaged as a reasonable, foreseeable, direct and proximate result of Defendants' actions in an amount to be proven at trial of not less than $1.1 million.

## COUNT VII
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

76.     WDC incorporates herein by reference its allegations set forth above.

17

77.     As set forth more particularly above, Defendants have engaged in a scheme to enrich themselves and injure WDC in its reputation, trade and business. As a part of that scheme Defendants crippled the joint venture's and WDC's businesses, trespassed in WDC's warehouse and stole an estimated $69,000 worth of equipment needed to carry out work for the joint venture's customers. Defendants or their employees or agents at the direction of Defendants have impersonated WDC employees using WDC's' name and marks. Defendants or their employees or agents at the direction of Defendants have been contacting WDC's residential customers and lying to them in order to steal the contractual payments that the customers owe to WDC.

78.     WDC had valid business relationships and expectancies, namely, the contracts that WDC would have carried out, and leads that would have become customers had it not been locked out of its computer systems.

79.     Defendants had knowledge of the relationships and expectancies.

80.     Defendants intentionally interfered with WDC's relationships and expectancies, causing a termination of the relationships and expectancies.

81.     As a reasonable, foreseeable, direct and proximate result of Defendants' interference, WDC has suffered damages in an amount to be proven at trial in an amount of not less than $1.1 million.

<u>**COUNT VIII**</u>
**TORTIOUS INTERFERENCE WITH CONTRACT**

82.     WDC incorporates herein by reference its allegations set forth above.

83.     WDC had valid contractual relationships with customers for solar installation.

84.     Defendants had knowledge of these contractual relationships.

85.     Defendants intentionally interfered with WDC's contractual relationships by, among other things, defrauding customers by telling them that they needed to enter into new contracts on the false pretenses given to them by Defendants and causing customers to breach their agreements with

WDC. Defendants have also denied WDC's ability to provide contractual services to its customers by locking WDC out of essential business accounts and stealing tools and equipment.

86.     As a reasonable, foreseeable, direct and proximate result of Defendants' interference, WDC has suffered damages in an amount to be proven at trial in an amount of not less than $1.1 million.

## COUNT IX
## TRADEMARK INFRINGEMENT

87.     WDC incorporates herein by reference its allegations set forth above.

88.     Without WDC's consent and in violation of federal and District of Columbia common law, Defendants have used and continue to use WDC's marks in commerce in a manner that is likely to cause consumer confusion with respect to the source and origin of Defendants' services and to deceive consumers as to the affiliation, connection, or association of Defendants with WDC and its services.

89.     Defendants' acts have been deliberate, willful and intentional, with full knowledge and in conscious disregard of WDC's rights in the marks.

90.     As a direct and proximate result of Defendants' wrongful acts, WDC has suffered and continues to suffer damage to its marks, reputation and goodwill.

91.     Unless restrained, Defendants will continue to use WDC's marks in violation of the law, and will cause irreparable damage to WDC. WDC has no adequate remedy at law and is entitled to an injunction restraining Defendants from engaging in further acts of infringement.

92.     WDC is entitled to recover from Defendants actual damages that it has sustained as a result of Defendants' wrongful acts. WDC is further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of their wrongful acts.

## COUNT X
## TRESPASS TO CHATTELS

93.     WDC incorporates herein by reference its allegations set forth above.

94.     As set forth more particularly above, each of the Defendants has assumed and exercised control and ownership of, and disrupted and interfered with, WDC's computer systems and accounts. Defendants have unlawfully taken files from WDC in violation of the Agreement and have stolen tools and equipment needed to carry out WDC's business. This property belongs to WDC and not to the Defendants.

95.     The Defendants' misconduct has denied and interfered with WDC's use and possession of its property and its rights as the owner of that property.

96.     WDC was damaged as a reasonable, foreseeable, direct and proximate result of Defendants' actions in an amount to be proven at trial of not less than $1.1 million.

**COUNT XI**
**ACCOUNTING**

97.     WDC incorporates herein by reference its allegations set forth above.

98.     WDC, as a member of the joint venture, should receive an accounting of its share of joint venture funds and assets.

WHEREFORE, Plaintiff WDC Solar, Inc. respectfully requests the following relief from Defendants on WDC's claims in this case:

a.     An award of compensatory damages in an amount to be proven at trial, but not less than $1.1 million;

b.     An award of punitive damages as may be allowed by law;

c.     Disgorgement and repayment to WDC of the amounts wrongfully retained by Defendants for the time period Defendants were in breach of their fiduciary, contractual, and legal duties to WDC and the joint venture;

d.     An award of attorneys' fees and costs pursuant to Section 19 of the JV Agreement;

e.     A temporary restraining order, preliminary injunction, and permanent injunction;

f.      An award of constructive trusts on Defendants' property to the extent of their

misappropriation of WDC's property;

g.      Pre-judgment interest; and

h.      Such other and further relief as the Court may deem to be appropriate.

## JURY DEMAND

WDC demands a trial by jury of all issues so triable.

Dated: January 19, 2021                   Respectfully submitted,


By:_____/s/ *Elisabeth Kidder*_____
Elisabeth Kidder, DC Bar #987508
lkidder@watkinsonmiller.com
Richard Rossier, DC Bar # 334649
rrossier@watkinsonmiller.com
Susan Gschwendtner, DC Bar # 392074
SGschwendtner@watkinsonmiller.com
Alex Menendez, DC Bar # 470475
amenendez@watkinsonmiller.com
WATKINSON MILLER, PLLC
1100 New Jersey Ave, SE, Suite 910
Washington, DC 20003
(202) 812-2456

## VERIFICATION

I, Mark A. Davis, declare as follows:

     1.     I am the founder and President of WDC Solar, Inc., plaintiff in the above-captioned case.

     2.     I have personal knowledge of the facts set out in the foregoing Verified Complaint, and if called on to testify, I would competently testify as to the matters stated herein.

     3.     I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Verified Complaint are true and correct to the best of my knowledge, information and belief.

Executed on January 19, 2021
in Washington, D.C.

_____
Mark A. Davis